IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MERLIN B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Commissioner of Social Security, <br><br> Defendant. | Case No. 6:22-cv-00447-SB <br><br> **OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Merlin B. ("Plaintiff") brings this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court affirms the Commissioner's decision.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was sixty-two years old on November 30, 2018, the amended alleged onset date, and has a high school education.[2] (Tr. 38, 68, 215.) Plaintiff alleges disability based on pain in

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.*

his ankles, knees, hips, shoulders, left elbow, and left hand. (Tr. 68.) The Commissioner denied Plaintiff's application initially and upon reconsideration. (Tr. 80, 100.)

Plaintiff requested and had a hearing before an Administrative Law Judge ("ALJ") on February 22, 2021. (Tr. 32.) Plaintiff, his attorney, and a vocational expert appeared by telephone and testified. On March 6, 2021, the ALJ issued a written decision denying Plaintiff's application. (Tr. 13-25.) The Appeals Council denied Plaintiff's request for review on January 24, 2022, making the ALJ's written decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

///

---

(citations omitted). Plaintiff's date last insured of March 31, 2022 (Tr. 68), reflects the date on which his insured status terminated based on the prior accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before March 31, 2022, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

PAGE 3 – OPINION AND ORDER

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id*. at 954. The Commissioner bears the burden of proof at step five of the analysis, whether the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-25.) The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since November 30, 2018, the amended alleged onset date. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe, medically determinable impairments: "degenerative joint disease of the left shoulder with a complete AC tear, degenerative joint disease of the right shoulder, left hand trigger fingers, left hand cubital tunnel and ulnar neuropathy with transposition, and degenerative disc disease of the lumbar spine." (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 17.)

The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [He] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for about 6 hours total in an 8-hour workday and can sit for about 6 hours total in an 8-hour workday. He can occasionally stoop, crouch, crawl, and climb ladders, ropes, or scaffolds. He can frequently handle, finger, and feel with the left non-dominant upper extremity. He has no limitations in the use of the right dominant upper extremity. However, he can only occasionally reach overhead with the bilateral upper extremities.

PAGE 4 – OPINION AND ORDER

(Tr. 17-18.) At step four, the ALJ concluded that Plaintiff can perform his past relevant work as a motor vehicle dispatcher and as a supervisor of a boating store. (Tr. 24.) Accordingly, the ALJ found that Plaintiff was not disabled. (*Id.*)

## DISCUSSION

Plaintiff argues that the ALJ erred by discounting: (1) Plaintiff's subjective symptom testimony; (2) the medical opinions of nurse practitioner Tom Trubenbach and Dr. Kiley Ziegler; and (3) lay witness testimony.

I.   **PLAINTIFF'S SYMPTOM TESTIMONY**

   A.   **Applicable Law**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

PAGE 5 – OPINION AND ORDER

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

### B. Plaintiff's Testimony

Plaintiff testified that he supervised a boat store from 1998 through 2006. (Tr. 240.) From 2007 until 2008, he worked as a boat rigger but left that job due to pain in his legs, back, and shoulders. (Tr. 41-42, 240.) He testified that "[w]hen I quit the boat business, I couldn't do anything above my shoulders with my arms at all." (Tr. 41-42.)

Plaintiff then worked as a trucking dispatcher from March 2012 until November 2018. (Tr. 240.) He testified that he left the dispatcher job due to the "nerve damage in [his] hands," and because he was missing so much work due to pain in his hips and shoulders. (Tr. 42, 46.) Plaintiff also testified that he is "in a fog most of the time," due to his pain medications. (Tr. 47.)

Plaintiff testified that he has limited use of his left hand and he drops things regularly. (Tr. 48.) If his shoulder is inflamed, his wife washes his hair because he cannot raise his hands above his head. (Tr. 50.) He testified that he can sit for thirty minutes, then needs to walk and stretch for ten to fifteen minutes, before he can sit for another thirty minutes. (Tr. 51-52.)

### C. Analysis

There is no evidence of malingering and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 19.) The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163 (explaining that the ALJ must give "specific, clear and convincing reasons for the rejection"). The ALJ did so here.

///

PAGE 6 – OPINION AND ORDER

The ALJ offered two reasons for discrediting Plaintiff's testimony, both of which Plaintiff argues were improper. First, the ALJ found that Plaintiff's testimony was not consistent with the medical evidence. Second, the ALJ found that Plaintiff's daily living activities contradicted his subjective symptom testimony. Plaintiff also argues that the ALJ was not sufficiently specific in discounting Plaintiff's testimony, failing to satisfy the requirement that an ALJ "link" a plaintiff's testimony "to the particular parts of the record supporting [the] non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

### 1. Specificity

As an initial matter, the Court disagrees that the ALJ was not sufficiently specific in discounting Plaintiff's symptom testimony.

Plaintiff is correct that Ninth Circuit authority "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) and citing *Brown-Hunter*, 806 F.3d at 493). In *Lambert*, the Ninth Circuit held that it was not enough for the ALJ to "not[e] generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the objective medical and other evidence'" because "this 'boilerplate statement' . . . which is 'routinely include[d]' in ALJ decisions denying benefits, did not 'identify what parts of the claimant's testimony were not credible and why.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1103). In that case, the ALJ did not identify specific activities of daily living or point to specific medical evidence that contradicted the claimant's allegations of disabling impairments, and the Ninth Circuit found that the ALJ's "high-level reasons" to discount the claimant's testimony did "not permit meaningful review." *Id.* at 1277-78.

PAGE 7 – OPINION AND ORDER

Here, the ALJ's explanation for discounting Plaintiff's testimony went beyond boilerplate and the Court is able to "reasonably discern" the ALJ's path. *See Despinis v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-01373-HZ, 2017 WL 1927926, at *7 (D. Or. May 10, 2017) (finding the claimant's reliance on *Brown-Hunter* "unavailing," and stating that although "the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path") (citation omitted).

The ALJ first summarized Plaintiff's symptom testimony, explaining that Plaintiff reported significant limitations in sitting, standing, walking, climbing, lifting, and carrying, as well as handling and fingering objects. (Tr. 18.) Plaintiff also reported that after his shoulder surgery, his shoulder was stronger and better, but not "fixed," and that his pain medications put him in a "fog most of the time." (*Id.*) The ALJ then summarized how Plaintiff's family helps him, including that his wife washes his hair once or twice a month and his son mows the grass on Plaintiff's six acres. (*Id.*) The ALJ found that Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 19.)

The ALJ then identified a list of Plaintiff's daily activities that contradicted Plaintiff's testimony about his disabling physical symptoms, including his ability to prepare simple meals, drive a car, shop in stores, care for his vegetable garden, and vacuum. (Tr. 18-19.) The ALJ next addressed each of Plaintiff's successful surgeries, and Plaintiff's reports of his satisfaction with the surgeries to his medical providers. (Tr. 19-20.) Although the ALJ did not tie each of Plaintiff's daily activities or successful surgeries to a specific disabling symptom, this Court does not interpret *Lambert* to require that level of granularity. *See Lambert*, 980 F.3d at 1277 (holding that "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's

testimony, nor do they require ALJs to draft dissertations when denying benefits" (citing *Treichler*, 775 F.3d at 1103)); *see also Young v. Saul*, 845 F. App'x 518, 519-20 (9th Cir. 2021) ("The ALJ . . . gave specific reasons why he did not credit [the claimant's] claims concerning the 'limiting effects' of [the claimant's] symptoms, including his 'back and knee pain.' The ALJ was not required to mention explicitly, in his ruling, each detail of [the claimant's] testimony, such as the need to take off weeks at a time from work." (citing *Lambert*, 980 F.3d at 1277)).

The Court can reasonably discern the ALJ's specific reasons for discounting Plaintiff's testimony, and therefore the ALJ did not err with respect to the specificity of her analysis. *Cf. Brown-Hunter*, 806 F.3d at 494 (holding that the ALJ erred where a reviewing court could not "discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found [the claimant's] testimony to be not credible"); *see also Despinis*, 2017 WL 1927926, at *7 (finding that although "the ALJ's opinion could have more clearly stated each reason and how it served to discount Plaintiff's credibility, the Court is able to 'reasonably discern' the ALJ's path") (citation omitted).

### 2.     Inconsistency with Objective Medical Evidence

The ALJ also discounted Plaintiff's allegations of disabling symptoms because they were inconsistent with the objective medical evidence. (Tr. 24.) This was a clear and convincing reason for discounting Plaintiff's testimony. *See Flores v. Colvin*, 546 F. App'x 638, 640 (9th Cir. 2013) (holding that the ALJ met the clear and convincing reasons standard and noting that the ALJ discounted the claimant's testimony on the ground that it was "inconsistent with the medical evidence").

Substantial evidence supports the ALJ's findings here. The ALJ noted that the medical records revealed a pattern of Plaintiff's issues with various joints—first his left elbow, then left shoulder, then hips, and then left hand—but that a successful surgery followed each complaint.

PAGE 9 – OPINION AND ORDER

(Tr. 24-25.) Specifically, starting in December 2018, Plaintiff saw his medical providers regularly complaining of shoulder and arm pain. (*See, e.g.*, Tr. 357, 359, 429, 465, 482.) On June 11, 2019, Plaintiff had surgery on his left elbow. (Tr. 486.) Six weeks after his operation, his medical provider noted: "[l]eft upper extremity examination reveals a well-healed surgical scar[,]" "[n]o tenderness to palpation[,]" and "[r]ange of motion is essentially full." (Tr. 492.) Plaintiff reported to his medical provider that "[h]e is back to regular activity, and doing well." (*Id.*)

On October 31, 2019, Plaintiff had surgery on his left shoulder to repair a torn rotator cuff. (Tr. 607.) After surgery he underwent physical therapy, and consistently reported that he was improving and doing well. (*See, e.g.*, Tr. 575, 587, 590-91.) Indeed, Plaintiff was discharged from physical therapy on January 31, 2020, because he was able to do all of his "normal" activities of daily life. (Tr. 964.)

With respect to his hips, Plaintiff's medical records reflect that although he started experiencing hip pain in June 2019, he did seek out options to reduce his hip pain until January 2020. (Tr. 497, 1076.) In June 2020, Plaintiff had angio-iliac intervention surgery, and had two stents placed in the iliac artery in both legs. (Tr. 982, 1117.) Three weeks later, Plaintiff reported to his medical provider that he is "very happy because he has had iliac artery stenting 3 weeks ago and his presenting symptoms have improved dramatically." (Tr. 999.) Plaintiff's doctor noted that Plaintiff "is doing fabulously." (Tr. 1002.)

Finally, Plaintiff had left trigger finger surgery on September 2, 2020, and sixteen days after that operation, Plaintiff reported that "he has no pain in the left long finger" and "he no longer had any catching or locking within the digit." (Tr. 1124, 1126.)

///

PAGE 10 – OPINION AND ORDER

In light of this objective medical evidence, the ALJ's conclusion that Plaintiff experienced improvement after each surgery is supported by substantial evidence, and the ALJ did not err in discounting Plaintiff's testimony on the ground that his conditions improved following surgery.[3] *See Rolston v. Astrue*, 298 F. App'x 661, 662 (9th Cir. 2008) (finding that the ALJ's reasoning was supported by substantial evidence because "the ALJ noted that Claimant's medical records and activities following surgery in September 2003 showed a marked improvement in Claimant's medical condition"); *Weirup v. Comm'r Soc. Sec. Admin.*, 249 F. App'x 697, 698 (9th Cir. 2007) ("The ALJ's finding that [the plaintiff] experienced medical improvement is supported by substantial evidence in the medical records . . . [because the plaintiff] has had several surgeries that were considered successful[.]").

### 3.  Activities of Daily Living

The ALJ also found that Plaintiff's daily living activities were inconsistent with his testimony regarding his disabling impairments. An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

---

[3] The ALJ also found that Plaintiff's testimony regarding adverse side effects from his medications was inconsistent with the objective medical evidence. (Tr. 20.) This finding is also supported by substantial evidence. Based on the Court's review of the medical record, there do not appear to be any medical records reflecting complaints from Plaintiff regarding any side effects of his pain medications. To the contrary, relevant medical records reflect "no adverse side effects noted" by Plaintiff. (Tr. 1134, 1193.) Thus, the ALJ did not err in concluding that Plaintiff's testimony about medication side effects was inconsistent with the medical record.

PAGE 11 – OPINION AND ORDER

In support of her finding, the ALJ observed that Plaintiff reported that he was "independent in personal activities, was able to heat up food and prepare simple meals for himself, drive a car, and shop in stores" and Plaintiff stated he was "still able to perform household chores including vacuuming the carpet and mowing the lawn." (Tr. 19.) The ALJ noted that Plaintiff reported to his medical providers that he was using an elliptical machine, and he stated in his Function Report that he walked outside every day. (Tr. 225.)

The Court finds that the inconsistency between Plaintiff's activities and his alleged limitations was a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony, and was supported by substantial evidence in the record. (*See, e.g.*, Tr. 492 (July 18, 2019, "[Plaintiff] is back to regular activity, and doing well."); Tr. 558 (January 31, 2020, "[Plaintiff] reports he is able to do all his normal [activities of daily living]. He is independent with his [home exercise program] and is able to continue independently."); Tr. 1002 (June 7, 2020, "[Plaintiff] is doing fabulously. He has had improvement of his symptoms with iliac artery stenting.")). Accordingly, the Court finds the ALJ did not err by concluding that Plaintiff's testimony about his pain and physical impairments was inconsistent with his reported daily activities.

For these reasons, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

## II.   MEDICAL OPINION EVIDENCE

### A.   Applicable Law

Plaintiff filed his application on January 14, 2019, and therefore the recently amended regulations regarding the evaluation of medical opinion evidence apply here. *See Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022) (observing that "[t]he new regulations apply to [a claimant's case if] she filed her claim on or after March 27, 2017," and explaining that the new

PAGE 12 – OPINION AND ORDER

regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* at 791 (quoting 20 C.F.R. § 404.1520(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ must "'articulate . . . how persuasive' [she] finds 'all the medical opinions' from each doctor or other sources . . . and 'explain how [she] considered the supportability and consistency factors' in reaching [her] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See id.* at 787 ("Now [under the new regulations], an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at 792.

**B.     Analysis**

**1.     Tom Trubenbach, NP**

Plaintiff argues that the ALJ erred by improperly discounting the medical opinion of nurse practitioner Tom Trubenbach. Trubenbach treated Plaintiff for over ten years, with visits every three to six months or as needed. (Tr. 370.) Trubenbach completed a treating source statement on January 29, 2019, prior to all of Plaintiff's surgeries discussed above. (*Id.*)

PAGE 13 – OPINION AND ORDER

Trubenbach opined that Plaintiff could use his arms for reaching only 25% of an 8-hour workday, and that he would need 20-30 minute breaks after using his arms. (Tr. 373.) He also opined that Plaintiff would miss three to four days a month due to pain. (Tr. 374.)

The ALJ found Trubenbach's opinion "less persuasive" because it pre-dated Plaintiff's surgeries and, therefore, did not reflect Plaintiff's positive responses to treatment. (Tr. 22.) As outlined above, Plaintiff responded well to each surgery, and Trubenbach's opinion predated such treatment. Accordingly, substantial evidence supports the ALJ's conclusion, and the ALJ did not err in discounting Trubenbach's opinion. *See Wozniak v. Saul*, 843 F. App'x 942, 943 (9th Cir. 2021) (affirming the ALJ's discounting of medical opinion rendered prior to successful surgery).

### 2. Dr. Kiley Ziegler, MD

Dr. Ziegler performed Plaintiff's trigger finger, elbow, and shoulder surgeries. (Tr. 1219.) Dr. Ziegler opined that Plaintiff could constantly use his right (1) hand for grasping, turning, and twisting objects; (2) fingers for fine manipulations; and (3) arms for reaching (Tr. 1222), but that Plaintiff could only occasionally use his left extremities for the same functions. (*Id.*) Dr. Ziegler also opined that Plaintiff would be off task for 25% or more of a typical day due to "weakness & numbness." (*Id.*)

The ALJ found Dr. Ziegler's opinion only "somewhat persuasive." (Tr. 22.) Specifically, the ALJ noted that "the record does not show that Dr. Ziegler, or any other provider, evaluated the claimant's left hand grip strength or dexterity in the left hand" and "[a]s such, the handling and fingering limitations are neither supported by Dr. Ziegler's records, nor or they consistent with other medical evidence." (*Id.*) The ALJ also found Dr. Ziegler's opinion that Plaintiff would be off task for 25% of a workday inconsistent with the medical record in that the most recent records reflected "physical examination findings within normal limits, stated the claimant's

PAGE 14 – OPINION AND ORDER

symptoms were well controlled, and recommended no more than conservative care." (Tr. 23.) Substantial evidence supported the ALJ's findings. (*See, e.g.*, Tr. 27, 318, 647, 1124, 1126.)

Plaintiff argues that the ALJ erred by "relying only on the most recent record" in evaluating Dr. Ziegler's opinion and by "fail[ing] to account for the full adjudicatory period." (Pl.'s Br. at 17.) Specifically, Plaintiff argues that the ALJ failed to consider that Plaintiff still experienced impairments after his June 2019 surgery on his left arm and required a second surgery in September 2020. (*Id.*) Contrary to Plaintiff's argument, the ALJ reviewed and evaluated the medical record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) (instructing that "the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion"). Although Plaintiff did require another surgery in September 2020, Plaintiff did not complain of left finger issues until August 2020, just before surgery was scheduled. (*See* Tr. 1121.) The only references to Plaintiff's left finger in medical records between June 2019 and August 2020 reported improvements. (*See, e.g.*, Tr. 491 (June 18, 2019, Plaintiff reports he is "back to regular activity, and doing well."); Tr. 1154 (February 17, 2020, Plaintiff received a cortisol injection and "notes that his symptoms in the hands completely resolved."))

For these reasons, the Court finds that the ALJ did not err in discounting Dr. Zeigler's opinion.

### III.   LAY WITNESS TESTIMONY

Finally, Plaintiff argues that the ALJ erred in discrediting the Work Activity Questionnaire provided by Plaintiff's former employer. Plaintiff's former supervisor completed the form on February 7, 2019, and a similar form on January 4, 2021. (Tr. 307, 368.) The ALJ found the form "minimally persuasive" for two reasons: (1) Plaintiff's supervisor was not "a medical source and was not trying to make medically exacting observations," and (2) the

PAGE 15 – OPINION AND ORDER

supervisor's opinion referred to the time period before November 30, 2018, which pre-dated Plaintiff's successful surgeries. (Tr. 21.)

### A. Applicable Law

An ALJ "must consider lay witness testimony concerning a claimant's ability to work."[4] *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). The ALJ cannot disregard such testimony without providing reasons that are "germane to each witness." *Stout*, 454 F.3d at 1056 (citations omitted). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

### B. Analysis

The Court agrees with Plaintiff that it was improper for the ALJ to discount the supervisor's testimony simply because she did not have any medical expertise. However, any error was harmless because the ALJ's second reason for discounting the testimony was germane and is supported by substantial evidence.

For the reasons discussed above, the ALJ's discounting of the lay opinion because it concerned a time period prior to Plaintiff's successful surgeries was a germane reason for discounting the testimony, and is supported by substantial evidence here. *See Conley v. Comm'r of Soc. Sec. Admin.*, 321 F. App'x 575, 578 (9th Cir. 2009) ("Because the lay witnesses' testimony was inconsistent with the medical evidence and the ALJ provided 'germane' reasons

---

[4] "It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 (9th Cir. Dec. 27, 2022). The Court need not reach the Commissioner's argument that the ALJ was not required to articulate germane reasons for discounting lay witness testimony, because the Court finds that the ALJ did so here.

PAGE 16 – OPINION AND ORDER

for discounting it, the ALJ did not err."); *see also* Tanya L. L. v. Comm'r Soc. Sec., 526 F. Supp. 3d 858, 869 (D. Or. 2021) ("Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony 'generally repeat[s]' the properly discredited testimony of a claimant.").

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 25th day of August, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge